**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

**Alesia Denise Jackson,**

*Plaintiff,*

**v.**

**Case 3:25-cv-005**
**Judge Thomas M. Rose**

**National Church Residences of Hoover Place, LLC, et al.,**

*Defendants.*

---

**ENTRY AND ORDER GRANTING MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (DOC. 14.) , AND TERMINATING CASE**

---

Pending before the Court is Defendant, National Church Residences of Hoover Place, LLC's Motion to Dismiss for Failure to State a Claim (Doc. 14), filed on behalf of itself and all unserved Defendants. (*Id.*, PageID 120, fn.1.)

## I. Background

Plaintiff Alesia Denise Jackson alleges in her Amended Complaint (Doc. 8) that she represents the interests of another resident, Jesse Smith, in connection with Smith's asthma and alleged need for disability-based accommodations, the denial of which are the basis of Jackson's disability-based housing disclination claims. (Doc. 8, PageID 88). Plaintiff's association with

Smith is tenuous at best. Plaintiff states "every letter I wrote per Smith's request … were ignored." (Doc. 8, PageID 89). Plaintiff later alleges that she was associated with another disabled resident, Yolanda Veasley. (Doc. 8, PageID 92). Veasley was a "partial quadriplegic." (Doc. 8, PageID 92). Specifically, Plaintiff states, "I counseled & helped Veasley obtain her documents." (Doc. 8, PageID 92). Paragraph 47 goes on to allege that "[e]very person at [National Church Residences] that I sent complaints to[] are complicit in covering up the crimes of the abuse of the elderly & discrimination of the disabled & interfering in my right to pursue this housing complaint…." (Doc. 8, PageID 95).

Plaintiff relies on these allegations to give rise to an associational housing disability discrimination claim. Neither Smith nor Veasley, let alone their estates or legal representatives, have joined in this suit or brought any allegations against Defendants alleging housing discrimination. Plaintiff did not reside with the referenced individuals. Rather, the Amended Complaint states that Smith lived in apartment 124, Veasley lived in apartment 140, and Plaintiff and her spouse reside in apartment 237. (*See* Doc. 8, PageID 91-92; Doc. 11, PageID 107).

Plaintiff alleges a litany of concerns regarding the condition of her apartment and apartment complex. The alleged discriminatory and retaliatory actions include: (1) in December 2022, Plaintiff found a "discrepancy in [her] paperwork with the amount of rent [she] paid. It was lower than that on [her] lease." (Doc. 8, PageID 89); (2) after bringing this information to Defendant Hoosier's attention, "she began to get huffy & puffy" with Plaintiff (Doc. 8, PageID 89); (3) difficulties in communications with staff (Doc. 8, PageID 89, 90); (4) additional paperwork for Plaintiff and cancellation of inspections (Doc. 8, PageID 89); (5) incomplete paperwork for Section 8 appointments (Doc. 8, PageID 89); (6) increased rent (Doc. 8, PageID 89); (7) notices of lease

violations from April-September 2023 (Doc. 8, PageID 91); (8) communal restrooms locked for all tenants during renovations (Doc. 8, PageID 91); (9) in renovated apartments, smoke detectors placed too close to ovens (Doc. 8, PageID 93); (10) low flow toilets, overflowing trash in the dumpster, gaps in door frames, doors that are too heavy, a gap between the wall and the floor, neglected maintenance for laundry rooms, mold in the walls of apartments 236 and 136 [neither of which occupied by Plaintiff] (Doc. 8, PageID 93-94); (11) stolen and vandalized cars in parking lot and otherwise lax security for the complex (Doc. 8, PageID 94); and (12) no caseworker for the elderly and difficulty in lodging complaints (Doc. 8, PageID 95).

**II. Jurisdiction**

Plaintiff filed the instant action *pro se* in this Court on January 3, 2025, invoking federal question jurisdiction under 28 U.S.C. § 1343(3). (Doc. 3, PageID 21.)

**III. Standard**

Federal Rule of Civil Procedure 8(a)(2) provides that "a pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though "detailed factual allegations" are not required, there must be sufficient facts stated in the complaint that, if accepted as true, the complaint states a claim to relief that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 555, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 556.

However,

> First, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of actions elements, supported by mere conclusory statements…. Second, determining whether a complaint states a plausible claim is context

> specific, requiring the reviewing court to draw on its experience and common sense…. A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009) (citing *Twombly* 550 U.S. at 555-56). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 545

## IV. Analysis

Plaintiff contends Defendants discriminated against her based on her association with two third-party disabled residents and also retaliated against her based on her filing of the Housing Discrimination Complaint made to the U.S. Department of Housing and Urban Development in 2024 ("HUD Complaint") (*See* Doc. 8, PageID 83-87). Plaintiff's claim cannot survive simply because she is and was not an "associate" of any of the referenced disabled person(s) identified in her pleadings. For contextual background, Plaintiff's previously filed HUD Complaint alleged that the Defendants' purported actions involving these third parties "may constitute a violation of [Section] 804(b) or (f), and [Section] 818 of Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Act of 1988." (Doc. 8, PageID 87).

The purpose of the Fair Housing Act of 1988, 42 U.S.C. §§ 3604-17, is "to provide, within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. § 3601. The Act makes it unlawful to discriminate against an individual based on handicap in connection with the rental of a dwelling. 42 U.S.C. § 3604(f). "Handicap" or "disability" means a physical or

mental impairment that substantially limits one or more major life activities, a record of such an impairment, or being regarded as having such an impairment. 24 C.F.R § 100.201; 42 U.S.C. § 3602(h). Housing providers must make reasonable accommodations in rules, policies, practices, or services when such accommodations are necessary to afford a handicapped person equal opportunity to use and enjoy a dwelling unit. 24 C.F.R. § 100.204(a). A plaintiff can establish a violation of the act by showing either disparate treatment or disparate impact. *See Larkin v. Mich. Dep't of Soc. Servs.*, 89 F.3d 285, 289 (6th Cir. 1996).

To prevail on a claim under the act, a plaintiff must demonstrate unequal treatment based on a protected characteristic that affects the availability of housing. *See, e.g., Graoch Assocs. #33, L.P. v. Louisville/Jefferson Cnty. Metro Human Relations Comm'n*, 508 F.3d 366 (6th Cir. 2007); *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608 (6th Cir. 2012); *Texas Dept. of Housing and Cmty. Affairs v. Inclusive Cmyts. Project, Inc.*, 576 U.S. 519 (2015).

Here, Plaintiff has not alleged she suffers from any disability or that she has been denied any reasonable accommodation but instead, relies on her alleged "association" with Smith and Veasley. *See* 42 U.S.C. § 3604(f)(2)(C). But the only factual allegations Plaintiff makes to associate herself with either Smith or Veasley are: (1) writing letters allegedly at Smith's request; and (2) "counseling and helping" Veasley. Plaintiff does not allege that she was a family member or romantic partner to either woman, a sibling, a live-in aid or caretaker, or any other genuine, close personal relationship with either Smith or Veasley. *See Mazzocchi v. Windsor Owners Corp.*, 204 F.Supp.3d 583 (S.D.N.Y. 2016) (holding a long-term romantic partner and common-law spouse qualified as an "associate" of a disabled person based on close personal relationship, nearly twenty-year shared cohabitation, financial interdependence, and legal recognition of the

relationship in estate documents); *Painter-Payne v. Vesta West Bay, LLC*, 2:12-cv-912, 2014 WL 4638927 (S.D. Ohio Sept. 16, 2014) (holding non-disabled live-in aide had standing as an associate of a disabled person).

Plaintiff has also not plausibly shown that either of the other tenants at issue were qualified individuals under the ADA or FHA, meaning her claim fails for this additional reason. Plaintiff has not met the barebones requirement for pleading. At best, in a light most favorable to Plaintiff, she is a woman who lived in the same apartment complex as Smith and Veasley. This is not enough.

Plaintiff has not alleged that either Smith or Veasley had any type of legally-recognized relationship with Plaintiff, that either Smith or Veasley appointed Plaintiff as their representative, that any documentation (such as a power of attorney designation or other document) exists showing that either Smith or Veasley considered Plaintiff as a genuine, close personal relation, or that Plaintiff's finances were commingled with Smith or Veasley's. The only facts Plaintiff has provided are that Plaintiff and her spouse live in a different apartment from both Smith and Veasley, and Plaintiff provided assistance to each in addressing alleged concerns regarding their apartments.

Plaintiff's conclusory assumption that she is "associated with" Smith and Veasley is simply not enough. As a result, Plaintiff has no standing to assert an associational-based disability discrimination claim under the FHA. 42 U.S.C. § 3604(f)(2)(C).

Plaintiff's discrimination (and retaliation) claim also fails because she has not alleged that she was treated worse than others. By definition, to discriminate or retaliate against a person, that person must be treated worse than others who are similarly situated. *Bostock v. Clayton County*,

590 U.S. 644, 657 (2020) (noting that "discriminate against" a person means "treating that individual worse than others who are similarly situated."). The Supreme Court has held that "proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977).

Here, Plaintiff's allegations are based entirely on her conclusory beliefs that the management of the complex is inadequate and the new construction was shoddy. Even if those things were true, that would not amount to discrimination as these are the same issues that every tenant in the complex faces. Plaintiff has alleged no causal connection between the alleged deficiencies and her assistance to Smith and/or Veasley. Indeed, as "proof" of the alleged discrimination, Plaintiff points to mold in the walls of two other apartments – not her apartment, not Smith's, and not Veasley's. This allegation is therefore completely untethered to the backbone of her allegations, i.e., that she has been discriminated against or retaliated against because of her association with Smith and Veasley. Plaintiff's other examples (which are listed above), also do nothing to provide factual support for her allegation of discrimination.

It is unlawful under the FHA "to coerce, intimidate, threaten, or interfere with any person . . . on account of h[er] having exercised or enjoyed . . . any right granted or protected by [the FHA]." 42 U.S.C. § 3617. To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) she engaged in a protected activity; (2) the defendant subjected her to an adverse action; and (3) a causal link exists between the protected activity and the adverse action. *Roelen v. Akron Beacon Journal*, 199 F. Supp. 2d 685, 695 (N.D. Ohio 2002).

Plaintiff alleges that in September 2023, after learning of her HUD Complaint, Defendant

Hoosier "escalated the retaliation and harassment" against her by locking community restrooms, denying community space, causing conflicts between Plaintiff and staff, delaying her lease agreement, and mishandling Section 8 inspections. Critically, there is no allegation set forth in the Amended Complaint which shows that in September 2023, Defendants even had knowledge of the HUD Complaint. Indeed, Plaintiff's HUD Complaint was not even filed until January 3, 2024.

Also, none of the alleged "retaliatory acts" are materially adverse and thus not subject to action. *Roelen*, 199 F. Supp. 2d at 691 (N.D. Ohio 2002) ("[*D*]e *minimus*…actions are not materially adverse and therefore not actionable."). Further, many of the alleged "retaliatory acts" are things to which every resident in the apartment complex were subjected. For these reasons, Plaintiff's retaliation claim will be dismissed.

Finally, as to her allegations that her lease agreement was delayed and Section 8 inspection mishandled, despite the minimal information regarding these allegations, even if true, Plaintiff suffered no damages: she continues to reside at Hoover Place and receive Section 8 related benefits. None of the above has any connection to either Plaintiff's alleged association to disabled individuals or Plaintiff's filing of the instant HUD Complaint, and exclusively occurred before her January 3, 2024 HUD Complaint was filed. One cannot retaliate against someone if they have no knowledge of the underlying protected activity. *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013) ("[P]laintiff making retaliation claim … must establish that his or her protected activity was a but-for cause of the alleged adverse action"); s*ee also Lesiv v. Illinois Cent. R.R.*, 39 F.4th 903, 915-16 (7th Cir. 2022) ("[A] supervisor simply cannot retaliate against an employee for engaging in protected activity if the supervisor was not aware of the protected activity in the first place"). Thus, Plaintiff's retaliation claim is without merit and must be

dismissed.

Regarding Plaintiff's Motion to Amend Complaint (Doc. 20), this Motion is governed by Federal Rule of Civil Procedure 15(a) which states:

> A party may amend the party's pleadings ... only by leave of court or by written consent of the adverse party; and *leave of court shall be freely given when justice so requires.*

Fed. R. Civ. P. 15(a) (emphasis added). In evaluating when the interests of justice require leave to amend a pleading, courts consider several factors, including "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Coe v. Bell,* 161 F.3d 320, 341 (6th Cir. 1998) (quoting *Brooks v. Celeste,* 39 F.3d 125, 130 (6th Cir. 1994)). A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss. *Thiokol Corp. v. Dept. of Treasury, State of Michigan, Revenue Div.,* 987 F.2d 376, 382-83 (6th Cir. 1993); *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).

The Proposed Second Amended Complaint (Doc. 20, PageID 146-57) would fare no better than the Amended Complaint. The Proposed Second Amended Complaint alleges no facts that would provide associational standing nor retaliation and would thus not withstand a Rule 12(b)(6) motion to dismiss. Plaintiff's Motion to Amend Complaint (Doc. 20) will, therefore, also be denied.

**V. Conclusion**

Because Plaintiff has no associational standing and because no retaliation is alleged Defendant's Motion to Dismiss (Doc. 14) is **GRANTED.** Because Plaintiff's proposed Second

Amended Complaint would be futile, Plaintiff's Motion to Amend Complaint (Doc. 20) is **DENIED**. Plaintiff's Complaint is **DISMISSED** without prejudice and without leave to amend. Judgment shall enter in favor of Defendants and against Plaintiff. The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

**DONE** and **ORDERED** this Sunday, October 4, 2026.

s/Thomas M. Rose

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE